

[Tagged Opinion]

**ORDERED in the Southern District of Florida on August 31, 2012.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**In re:**                                                                              **Case No. 11-18943-EPK**

**MICHAEL GORDON TIBBS**                                                **Chapter 13**
**and TATIANA BELHAM TIBBS,**

      **Debtors.**
_____/

### ORDER GRANTING DEBTORS' MOTION
### TO APPROVE EARLY PAYOFF OF CHAPTER 13 PLAN

THIS MATTER came before the Court for hearings on July 16, 2012 and August 23, 2012[1] upon the *Motion to Approve Early Pay-off of Chapter 13 Plan* [ECF No. 35] (the "Motion") filed by Michael Gordon Tibbs and Tatiana Belham Tibbs ("Ms. Tibbs" and, with Michael Gordon Tibbs, the "Debtors"). The Debtors seek to modify their confirmed chapter 13 plan to accelerate the remaining scheduled distributions to creditors with a single, lump

---

[1] At the July 16, 2012 hearing it was unclear whether all creditors had been provided with notice of the motion and the hearing thereon. The hearing was re-noticed for August 23, 2012 and all creditors were provided with a copy of the motion and the notice of hearing. [ECF No. 42].

sum payment. If the modification is approved, the Debtors will obtain the funds necessary to make such payment via a gift from Ms. Tibbs' parents. The gift is conditioned upon the Court's approval of the proposed modification.

The chapter 13 trustee (the "Trustee") objects to the relief sought in the Motion, arguing that the proposed modification does not comply with the applicable provisions of the Bankruptcy Code. The Trustee does not suggest that the Motion is presented other than in good faith. No other party in interest objected to the Motion.

For the reasons stated below, the Court will grant the Motion.

I.   FACTS

On April 1, 2011, the Debtors filed a voluntary petition [ECF No. 1] (the "Petition") for relief under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. On Schedule I, the Debtors indicated a household comprising five individuals. [ECF No. 1, p. 31]. At the commencement of this case, the Debtors' combined monthly gross income was $6,292.28. [ECF No. 4]. Ms. Tibbs' earnings accounted for $1,701.65 of this amount, or about 27% of the Debtors' total income. It is not disputed that as of the petition date in this case the Debtors' income exceeded the applicable median income for a family of five determined under § 1325(b)(4)(A)(ii).[2]

Pursuant to Fed. R. Bankr. P. 3002(c), the deadline for unsecured creditors to file proofs of claim was July 27, 2011. Seven creditors filed eight timely proofs of claim presenting unsecured claims in the aggregate amount of $172,462.27. No creditor filed a priority claim. No party in interest objected to any filed claim. Thus, the aggregate amount of the Debtors' unsecured debt is $172,462.27. *See* 11 U.S.C. § 502(a) ("A claim or interest,

---

[2] Unless otherwise indicated, the term "section" and the symbol "§" refer to sections of the United States Bankruptcy Code.

2

proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects.").

On April 19, 2011, the Debtors filed their *First Amended Chapter 13 Plan* [ECF No. 19] (the "Plan"). In the Plan, the Debtors proposed to pay to the Trustee $247.50 each month for sixty months for a total of $14,850.00. Of this amount, $11,726.00 would be paid to the Debtors' unsecured creditors, a recovery of approximately 6.8%. On July 14, 2011, the Court entered its *Order Confirming Chapter 13 Plan* [ECF No. 28] (the "Confirmation Order"), finding that the Plan satisfied all applicable provisions of the Bankruptcy Code.

Nearly a year later, on June 5, 2012, the Debtors filed the instant Motion. In the Motion the Debtors state, in pertinent part:

> 2. The Debtor, Tatiana Tibbs, has lost her job and is currently unemployed. This fact has placed the Debtors in a situation where they are unable to continue making the plan payments under the confirmed plan.
>
> 3. Debtors are filing this motion for the purpose of obtaining this courts approval to pay the total amount necessary to complete the Debtors Chapter 13 Plan. The parents of Tatiana Tibbs have agreed to provide a gift to the debtors in the full amount necessary to pay off the plan. They have executed an affidavit of gift to allow plan pay-off which will be filed in this cause upon approval of this motion.
>
> **4. THE UNSECURED CREDITORS ARE HEREBY ADVISED THAT THE GRANTING OF THIS MOTION MAY DEPRIVE THEM OF A POTENTIALLY HIGHER DIVIDEND IN THE EVENT THAT THE DEBTORS HAVE AN INCREASE IN DISPOSABLE INCOME OVER THE ORIGINAL SIXTY (60) MONTHS OF THE CONFIRMED PLAN**.

[ECF No. 35, p. 1] (emphasis in original).

Without Ms. Tibbs' income, the Debtors will be unable to continue making payments under the Plan as confirmed. Indeed, without Ms. Tibbs' income the Debtors are unable to make any monthly payments on account of unsecured debt. Instead, the Debtors seek to modify the Plan to pay off the balance remaining on the Plan in a single payment. To accomplish this, Ms. Tibbs' parents would make a cash gift to the Debtors that the Debtors

3

would then pay to the Trustee for distribution to creditors holding allowed claims. The cash gift is contingent upon the Court allowing the Debtors to modify the Plan in the manner requested in the Motion.

II.     ARGUMENTS

The Trustee objects to the Motion, citing Judge Isicoff's unpublished order in the case of *In re Rhymaun*, Case No. 10-20092-LMI, ECF No. 73 (Bankr. S.D. Fla. August 8, 2011). The Trustee expresses a concern that granting the Motion may encourage other chapter 13 debtors to file similar motions in an attempt to use otherwise exempt assets to pay off their chapter 13 plans early. In response, the Debtors argue that unsecured creditors are protected from inappropriate attempts to modify chapter 13 plans by the good faith requirements imposed under § 1325(a), made applicable to modification requests under § 1329(b)(1). The Debtor also notes that, in spite of clear notice of the impact of the Motion if granted, no creditor objected.

III.    ANALYSIS

The question before the Court is whether the Debtors may modify their confirmed Plan to pay all remaining amounts in a single payment, before the applicable commitment period has run, without paying allowed unsecured claims in full, when there is no allegation that the Debtors seek to modify the Plan in other than in good faith. In other words, does § 1329, which addresses modification of a confirmed chapter 13 plan, require that the modified plan remain in place for the "applicable commitment period" determined under § 1325(b)(4) unless the modified plan provides for payment in full of allowed unsecured claims? If a plan modified under § 1329 is subject to the "applicable commitment period" requirements of § 1325(b), then the Debtors' attempt to modify their Plan to provide

4

for a lump sum payment in full satisfaction of their Plan prior to its original five year term must fail. If a plan modified under § 1329 is not subject to the term requirements of § 1325(b), and the Debtors' Plan as modified satisfies the other requirements of § 1329, then the proposed modification will be permitted.

As discussed in detail below, § 1329 does not incorporate § 1325(b), and thus a chapter 13 plan may be modified so that it has a term shorter than the applicable commitment period, so long as the plan as modified satisfies the other requirements of § 1329 including the specifically incorporated provisions of §§ 1322(a), 1322(b), and 1323(c) and the requirements of § 1325(a). Because the Debtor's Plan as modified satisfies all these requirements, the Motion will be granted.

The commencement of a bankruptcy case creates an estate comprising substantially all legal and equitable interests of the debtor in property as of the petition date. 11 U.S.C. § 541(a)(1). In a chapter 13 case, the estate includes all legal and equitable interests "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ." 11 U.S.C. § 1306(a)(1). Creditors must file proofs of claim in order to recover from the estate. *See* 11 U.S.C. §§ 101(5), 101(12), and 502. The primary goal of a chapter 13 case is the discharge of such debts under § 1328.

Pursuant to § 1321, a chapter 13 debtor must file a plan. The chapter 13 plan shall "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the [chapter 13] trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1). In general, a chapter 13 debtor does not obtain a discharge until completion of all payments under the plan. 11 U.S.C. § 1328(a).

In order to be confirmed, whether or not a party in interest objects, a chapter 13 plan must provide for payments to unsecured creditors with a present value at least equal to what they would obtain in a liquidation under chapter 7. 11 U.S.C. § 1325(a)(4); *see In re*

5

*Nott*, 269 B.R. 250, 256 (Bankr. M.D. Fla. 2000).  If the chapter 13 trustee or the holder of an allowed unsecured claim objects to confirmation, the plan may not be confirmed unless it provides either for payment in full of unsecured claims or that all of the debtor's projected disposable income during the applicable commitment period will be devoted to payment of unsecured claims. 11 U.S.C. § 1325(b)(1).  Sections 1325(b)(2) and (b)(3) govern the calculation of disposable income for purposes of chapter 13 plan confirmation.

Section 1325(b)(4) addresses the "applicable commitment period," meaning the term of the chapter 13 plan.  Because the Debtors' current monthly income exceeded the median income calculated pursuant to § 1325(b)(4)(A) for a family of five, the Debtors' applicable commitment period was five years.  Assuming an objection by the Trustee or an unsecured creditor, the Debtors were required to present a chapter 13 plan with a five year term unless their plan provided for payment in full of allowed unsecured claims in a shorter period. 11 U.S.C. § 1325(b)(1).   The Debtors' Plan proposed to pay unsecured creditors approximately 6.8% of their allowed claims over a term of five years.

Once a plan is confirmed, all property of the estate not necessary to fulfill the plan vests in the debtor. 11 U.S.C. § 1327; *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340 (11th Cir. 2000).  However, non-exempt property acquired by the debtor after plan confirmation vests in the estate until the case is dismissed, converted, or closed. *Waldron v. Brown (In re Waldron)*, 536 F.3d 1239, 1243 (11th Cir. 2008).  Accordingly, the court has discretion to require a debtor to amend his or her schedules to disclose assets acquired after plan confirmation. *Waldron*, 536 F.3d at 1246.  Such disclosure is important because § 1329(a) allows debtors, trustees, and unsecured creditors to request modification of an uncompleted confirmed plan to, among other things, "increase or reduce the amount of payment" and "extend or reduce the time for such payments."  When a debtor receives non-exempt assets after confirmation of a chapter 13 plan, "creditors may move the bankruptcy

6

court to modify the plan to increase payments made by the debtor to satisfy a larger number of the creditors' claims." *Waldron*, 536 F.3d at 1245.

In the present case, if the Debtors were to receive an un-restricted cash gift from Ms. Tibbs' parents they would be required to amend their schedules accordingly. The Trustee or an unsecured creditor likely would request modification of the Plan so that the cash gift would be applied to further payment of allowed unsecured claims. However, the cash gift offered by Ms. Tibbs' parents is conditioned on the Court allowing the Debtors to use the gift to pay off the Plan in a lump sum about four years early. If the Court grants the Debtors' Motion, unsecured creditors will be paid approximately 6.8% of their allowed unsecured claims immediately, rather than over the remaining four years of the Plan as originally confirmed. On the other hand, creditors would give up the possibility of greater recovery if the Debtors' experience an increase in income or obtain other non-exempt assets during the original term of the Plan.

A number of courts have considered whether the Bankruptcy Code permits a debtor to modify a confirmed chapter 13 plan to pay off all remaining amounts in a single lump sum or over a shortened term without paying unsecured creditors in full. Some courts conclude that such modification is permitted. *Sunahara v. Burchard (In re Sunahara)*, 326 B.R. 768 (B.A.P. 9th Cir. 2005); *In re Smith*, 449 B.R. 817 (Bankr. M.D. Fla. 2011); *In re Davis*, 439 B.R. 863, (Bankr. N.D. Ill. 2010); *In re White*, 411 B.R. 268 (Bankr. W.D.N.C. 2008); *In re Ewers*, 366 B.R. 139 (Bankr. D. Nev. 2007). Others conclude that the Bankruptcy Code prohibits such modification. *In re Heideker*, 455 B.R. 263 (Bankr. M.D. Fla. 2011); *In re Stretcher*, 466 B.R. 891, 894 (Bankr. W.D. Tex. 2011); *In re Buck*, 443 B.R. 463 (Bankr. N.D. Ga. 2010); *In re King*, 439 B.R. 129 (Bankr. S.D. Ill. 2010); *In re Heyward*,

386 B.R. 919 (Bankr. S.D. Ga. 2008). There does not appear to be a discernible majority in either camp. *See In re Buck*, 443 B.R. at 468.[3]

The Court's analysis begins with a review of the applicable provisions of the Bankruptcy Code. Section 1329 governs modification of a chapter 13 plan after confirmation. Section 1329(b)(1) provides that "[s]ections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section." Thus, § 1329(b)(1) specifically incorporates four provisions of the Bankruptcy Code.

Sections 1322(a), 1322(b), and 1323(c) apply in their entirety to modified plans. Section 1322(a) requires a five year plan only if priority claims will not be paid in full under the plan. The Debtors have no priority claims. Neither § 1322(b) nor § 1323(c) address the term of a chapter 13 plan. Section 1329(b)(1) incorporates the "requirements of section 1325(a)." No provision of § 1325(a) itself requires a minimum term for a chapter 13 plan.

Section 1325(a) begins with the phrase "Except as provided in subsection (b)." It is argued that the incorporation in § 1329(b)(1) of "the requirements of section 1325(a)," in light of the cross-reference in § 1325(a) to § 1325(b), means that § 1329(b)(1) also incorporates § 1325(b). There is a split among the courts as to whether § 1329 incorporates the applicable commitment period requirements of § 1325(b)(4). *In re Rhymaun*, Case No. 10-20092-LMI, ECF No. 73, p. 5. In this Court's view, neither traditional approaches to statutory construction nor the wording of § 1329(b)(1) support the conclusion that § 1329(b)(1) incorporates § 1325(b).

---

[3] When courts consider the related question of whether § 1329(b)(1), which governs plan modification, incorporates § 1325(b), which addresses devotion of a debtor's projected disposable income over the applicable commitment period to payment of unsecured claims, a majority of the reported decisions answer in the affirmative, "though many do so without comment or analysis." Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 255.1 at ¶ 5, Sec. Rev. June 15, 2004, www.Ch13online.com. This issue is addressed in detail below.

"In any question of statutory construction, the plain language of the statute must be followed in the absence of compelling contrary indications." *In re Davis*, 439 B.R. 863, 866 (Bankr. N.D. Ill. 2010) (citing *Hartford Underwriters v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (internal citation omitted). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters v. Union Planters Bank, N.A.*, 530 U.S. at 6 (internal citations and quotations omitted).

Because §1329(b)(1) references only §§ 1322(a), 1322(b), and 1323(c), and the requirements of § 1325(a), it "excludes other provisions, under the maxim *expressio unius est exclusio alterius.*" *In re Davis,* 439 B.R. at 867 (internal citation omitted). If Congress intended to incorporate § 1325(b) into § 1329(b)(1), it certainly knew how to do so. Another provision of § 1329, subsection (c), sets a cap on the term of the plan as modified and for this purpose refers to "the applicable commitment period under section 1325(b)(1)(B)."

To determine that § 1329(b)(1) incorporates § 1325(b) because of the introductory text in § 1325(a) referring to § 1325(b) "collides with the rule that statutes should be interpreted to avoid redundancies," as doing so would cause § 1329(b)(1) to incorporate § 1322(a) twice, once directly and once as a result of reference to § 1322(b) which also refers to § 1322(a). Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 255.1 at ¶ 4, n.4, Sec. Rev. June 15, 2004, www.Ch13online.com.  Indeed, if the Trustee's argument was correct Congress need not have referenced § 1322(a) in § 1329(b)(1) as it did because § 1322(a) is cross-referenced in § 1322(b) which is listed in § 1329(b)(1).  Congress chose to list in § 1329(b)(1) each of subsections (a) and (b) of § 1322 to avoid exactly the type of confusion that would result from the construction posed here.  If Congress intended to incorporate § 1325(b) into § 1329(b)(1), it would have done so explicitly.

9

Importantly, § 1329(b)(1) does not simply cross-reference § 1325(a). Unlike the references to §§ 1322(a), 1322(b), and 1323(c), the cross-reference to § 1325(a) is limited to "the requirements of section 1325(a)." First, this should be read as incorporating only the requirements stated in the text of § 1325(a) itself, not the text of another provision referred to in § 1325(a). Second, the provisions of § 1325(b) are not "requirements" of § 1325(a). As aptly stated by the *Davis* court:

> § 1325(b) is not a "requirement." Rather than a prerequisite for confirmation, § 1325(b) is an exception to the confirmation that § 1325(a) otherwise mandates. Section 1325(a) states that courts must confirm a plan that meets its nine requirements; § 1325(b) has the potential for preventing that result. Nothing in § 1325(b) is required for confirmation. No party is required to object to confirmation under that subsection, and even if grounds for objection are present, a plan may be confirmed if the objection is not made.

*In re Davis,* 439 B.R. at 867 (internal citations omitted). By its own limiting language § 1329(b)(1) does not incorporate § 1325(b).

Failing to read § 1325(b) into § 1329(b)(1) does not result in an absurd disposition. Congress required that in order to confirm a chapter 13 plan over the objection of the chapter 13 trustee or an unsecured creditor the plan must extend for a specified minimum period depending on the debtor's income level. Unsecured creditors are entitled to require the debtor to devote his or her projected disposable income to payment of their allowed claims for a specified period. If the debtor experiences an increase in disposable income or obtains a windfall after confirmation, unsecured creditors have the power to request a modification to the plan during its term. But the Bankruptcy Code does not require that a modified plan have a particular minimum term. Section 1329 recognizes that modification may require an extension or a reduction in the time for payments. 11 U.S.C. § 1329(a). Congress provided some leeway in how a modification may be structured, and that leeway includes shortening the term to less than the original applicable commitment period or even to a single payment. This conclusion does not give chapter 13 debtors free range to

10

propose plan modifications otherwise inconsistent with the provisions of §§ 1322(a), 1322(b), and 1323(c) and the requirements of § 1325(a). Section 1329(b)(1) incorporates all of § 1325(a). Importantly, this includes the requirements that the chapter 13 plan and the debtor's petition itself have been filed in good faith. 11 U.S.C. §§ 1325(a)(3) and (a)(7); *see also In re Davis*, 439 B.R. at 869. These provisions provide ample protection to unsecured creditors against inappropriate attempts to modify confirmed chapter 13 plans.

In the present case, no party has alleged that the Debtors' Motion is presented other than in good faith. The Debtors' income has been substantially reduced by Ms. Tibbs' job loss. The Debtors' projected disposable income is now negative, meaning that no payment would be due to unsecured creditors under a modified chapter 13 plan with the original term of the Debtors' confirmed Plan (assuming such a modification is otherwise possible). Given the current employment market, it would be speculative to suggest that Ms. Tibbs' may obtain a new job at a higher salary than before and that the proposed modification would leave unsecured creditors unable to take advantage of such an increase in income. The Court has no reason to believe an increased distribution to unsecured creditors is remotely likely in this case. Although they did not so argue, it is possible that the Debtors are eligible to convert this case to a chapter 7 liquidation, in which case the distribution to unsecured creditors likely will be significantly less than provided in the Plan. There is no suggestion that the Debtors filed their chapter 13 petition or the Motion other than in good faith.

Further bolstering the Court's finding that the Debtors act in good faith here, the Motion includes a conspicuous warning to creditors, in all capital letters and bold face type, stating that if the Motion is granted unsecured creditors will lose the opportunity to take advantage of any increase in the Debtors' disposable income during the original five year term of the Plan. After adequate notice to all creditors no party objected other than the

Trustee.  Perhaps, as one court suggested, the Debtors' unsecured creditors failed to object to the Motion after taking account of the lump sum "certainty of payment, coupled with the time value of money" and the "feared . . . possibility that longterm unemployment could result in the Debtor[s] defaulting on future plan payments, or seeking a downward modification of those payments, or abandoning [their] [P]lan altogether by a voluntary dismissal or conversion to a Chapter 7 case." *In re Smith*, 449 B.R. 817, 820 (Bankr. M.D. Fla. 2011).  Whatever their reason for not coming forward, the Debtors' creditors did not oppose the Motion.

The Trustee raises the specter of debtors seeking to modify confirmed chapter 13 plans to permit them to use otherwise exempt assets to pay off their plans early.  Other than the modification proposed in the Motion, the Court makes no finding whether any particular proposed modification would satisfy the good faith requirements of §§ 1325(a)(3) and (a)(7).  Whether a chapter 13 petition is filed in good faith and whether a chapter 13 plan is proposed in good faith must be determined on a case by case basis.

The Trustee argues that a decision of the Eleventh Circuit Court of Appeals, *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873 (11th Cir. 2010), is binding in this case and warrants denial of the Motion.  For this proposition the Trustee cites a recent decision of this court, *In re Rhymaun*, Case No. 10-20092-LMI, ECF No. 73 (Bankr. S.D. Fla. August 8, 2011).

In *Tennyson*, the court considered "whether an above median income debtor, with negative disposable income, may obtain <u>confirmation</u> of a Chapter 13 bankruptcy plan to last less than five years when the debtor's unsecured creditors have not been paid in full." *Whaley v. Tennyson (In re Tennyson)*, 611 F.3d at 874 (emphasis supplied).  The debtor in *Tennyson,* whose income was above median, sought to confirm a plan that lasted only three

12

years but did not pay unsecured creditors in full. *Tennyson*, 611 F.3d at 875.  The trustee objected to confirmation, arguing that §§ 1325(b)(1)(B) and 1325(b)(4) imposed an applicable commitment period of five years based upon the debtor's income. *Id.*  Because the trustee had objected to confirmation and the plan did not provide for payment in full of unsecured creditors, § 1325(b)(1)(B) required that the plan devote all of the debtor's projected disposable income during the applicable commitment period to payment of unsecured creditors.  The bankruptcy court ruled that the plan could be confirmed over the trustee's objection because the debtor's disposable income, as calculated pursuant to §§ 1325(b)(2) and (3), was negative. *Id.* at 876.  Because a negative projected disposable income results in no payment to unsecured creditors, it was argued that the term of the plan would have no impact on distribution to unsecured creditors and so the plan need not meet the applicable commitment period requirement. *Id.*  The appeals court disagreed, ruling that "the 'applicable commitment period' is a temporal term that describes the minimum duration of a debtor's Chapter 13 bankruptcy plan." *Id.* at 880.   The Eleventh Circuit reversed the bankruptcy court order confirming the debtor's plan. *Id.*

There is no question that a chapter 13 plan may not be confirmed over the objection of the trustee or the holder of an allowed unsecured claim if the plan neither pays unsecured creditors in full nor provides that the debtor will devote his or her projected disposable income to payment of unsecured creditors over the entire applicable commitment period.  This is plainly required by § 1325 and the *Tennyson* court ruled accordingly. *Id.* at 877 ("The plain reading of § 1325(b)(4) indicates that . . . Tennyson [ ] is obligated to form a bankruptcy plan with an 'applicable commitment period' of no less than five years, unless unsecured creditors are paid in full.")

13

However, the *Tennyson* decision includes several broad statements that seem to apply in the present case. For example, the court said "it is clear that both § 1322(d) and § 1325(b)(4) are necessary to determine the proper time period that an above median income debtor must stay in Chapter 13 bankruptcy." *Id.* at 878. In support of its conclusion that the applicable commitment period defines the term of a chapter 13 plan, the court cited legislative history for §§ 1322(d) and 1325(b) for the proposition that Congress intended to ensure that debtors pay the maximum amount possible to their creditors. *Id.* at 879. The court noted that creditors may benefit from modification should the debtor obtain an increase in income after confirmation, and that permitting confirmation of a plan with a shorter term would curtail this opportunity. *Id.* Finally, the court flatly stated that "the 'applicable commitment period' is a temporal term that prescribes the minimum duration of a debtor's Chapter 13 bankruptcy plan. The only exception to this minimum period, if unsecured claims are fully repaid, is provided in § 1325(b)(4)(B)." *Id.* at 880. In light of these expansive statements, the *Tennyson* decision seems to stand for the proposition that a chapter 13 debtor must remain in chapter 13 for the entire applicable commitment period in order to obtain a discharge.

Several courts have cited the *Tennyson* decision in ruling that a chapter 13 debtor cannot modify his or her confirmed plan to shorten the term to less than the applicable commitment period. *In re Rhymaun*, Case No. 10-20092-LMI, ECF No. 73, p. 7 ("[T]he entire premise of the Eleventh Circuit's holding was the ability of creditors to seek modification during the . . . applicable commitment period if the debtor's circumstances changed."); *In re Heideker*, 455 B.R. at 271, 272 ("[Permitting early lump sum payoffs] would effectively eviscerate the Eleventh Circuit's decision in *Tennyson*."); *In re Buck*, 443 B.R. at 470 ("*Tennyson*'s underlying rationale in ruling that [the applicable commitment

14

period] is a temporal concept was that above-median income debtors must remain in their Chapter 13 plans for a sixty month time period to allow creditors to have the benefit of upward changes in income.").

Yet the *Tennyson* court did not have before it a motion to modify a confirmed chapter 13 plan under § 1329. The question before the court, clearly stated in the opening paragraph of the decision, was "whether an above median income debtor, with negative disposable income, may obtain confirmation of a Chapter 13 bankruptcy plan to last for less than five years when the debtor's unsecured creditors have not been paid in full." *Tennyson*, 611 F.3d at 874. Focusing solely on the confirmation requirements of chapter 13, the court answered this question easily, referring only to the text of the Bankruptcy Code itself. *Tennyson*, 611 F.3d at 876-77. While the court cited § 1329 several times, each such reference was in support of the court's ruling that § 1325(b) mandated the result. Nothing in *Tennyson* indicates that the Eleventh Circuit intended its broad statements in the context of chapter 13 plan confirmation to apply in the context of a later request to modify a confirmed plan. In fact, the court's central analysis focused on the effect of § 1325(b), a provision not applicable to modification under § 1329. The *Tennyson* decision has no impact on the disposition of the Motion before this Court.

    IV.    **CONCLUSION**

In light of the undisputed facts before the Court, and seeing that no party has alleged, and the Court has no reason to believe, that the proposed modification is requested other than in good faith, the modification to the Plan proposed by the Debtors satisfies §§ 1322(a), 1322(b), and 1323(c), and the requirements of § 1325(a), and is thus permitted under § 1329.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1.The Motion [ECF No. 35] is GRANTED.

2.The Trustee's objection to the Motion is OVERRULED.

3.The Plan [ECF No. 19] is hereby MODIFIED to permit the Debtors to make a single payment to the Trustee in an amount sufficient to pay all of the Debtors' remaining obligations under the Plan and thereby satisfy in full the requirements of their Plan.  Such amount shall be tendered to the Trustee in immediately available funds no later than fourteen (14) days after entry of this Order and shall be used by the Trustee to make final distributions under the Debtors' Plan.  If such amount is not tendered to the Trustee by said date, this Order shall be null and void.

4.As proposed in the Motion, the Debtors shall file an affidavit of Ms. Tibbs' parents indicating that they are willing to make a cash gift to Ms. Tibbs, conditioned on entry of this Order, in an amount sufficient to pay all of the Debtors' remaining obligations under the Plan.  Such amount becomes property of the estate solely to the extent necessary to permit the Trustee to pay creditors pursuant to the Plan as modified by this Order.

###

Copies furnished to:

James E. Copeland, Esq.

*James E. Copeland, Esq. is directed to serve a copy of this Order on all appropriate parties and to file a certificate of service with the Court.*